UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RICHARD L. HICKS,   Case No. 1:08-cv-24

    Plaintiff,   Weber, J.
                                       Black, M.J.

vs.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE BE CLOSED**

This is a Social Security appeal brought pursuant to 42 U.S.C. § 405(g). At issue is whether the administrative law judge ("ALJ") erred in finding that Plaintiff was not entitled to Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (*See* Administrative Transcript ("Tr.") (Tr. at 14-24) (ALJ's decision)).

**I.**

Plaintiff filed applications for DIB and SSI on November 27, 2002, alleging a disability onset date of May 31, 2002, due to pulmonary and musculoskeletal problems. (Tr. 60). His application was denied initially and on reconsideration. Plaintiff then requested a hearing *de novo* before an ALJ. An evidentiary hearing, at which Plaintiff was represented by counsel, was held on March 14, 2004. (Tr. 371- 423.) Dr. James McKenna testified as a medical expert and George Parsons testified as a vocational expert.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

On July 11, 2006, the ALJ entered his decision denying Plaintiff's claim. That decision stands as Defendant's final determination consequent to denial of review by the Appeals Council on November 14, 2007. (Tr. 11.)

The ALJ's "Findings," which represent the rationale of the decision, were as follows:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2007.

2. The claimant has not engaged in substantial gainful activity since May 31, 2002 the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*)

3. The claimant has the following severe impairments: emphysema with asthmatic component/chronic bronchitis; mild disc disease of the lumbosacral spine; and bilateral hearing loss (20 CFR 404.1520(c) 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that, the claimant had the residual functional capacity to perform medium work activity. He can lift/carry/push/pull up to 25 pounds frequently, 50 pounds occasionally. He cant stand/walk for six of eight hours. The claimant can occasionally stoop, kneel, crouch and crawl. He can also occastionally climb ramps and stairs. He should not climb ladders, ropes or should not work in an area with a load noise level. Due to his breathing difficulties, he should avoid concentrated exposure to extreme heat, extreme cold, fumes, noxious odors, dusts and gases. Any work performed will not require the claimant to speak \more than occasionally, and he will not be required to use the telephone. Further, the work should not required good auditory acuity or speech patter. Nor should the job entail the necessity to hear auditory cues or warnings.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965)

7. The claimant was born on February 21, 1943 and was 60 years old on the alleged disability onset date, which defines as an individual closely approaching retirement age. (20 CFR 404.1563 and 416.963.)

8. The claimant has at least a high school education, training as a nurse, and is able to communicate in English (20 CFR 404.1564 and 416.964.)

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled", whether or not the claimant has transferrable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c) and 416.966).

11. The claimant has not been under a "disability", as defined in the Social Security Act, from May 31, 2002 through the date of this decision. (20 CFR 404.1520(g) 416.920(g)).

(Tr. 16 - 23 .)

In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to DIB or SSI.

On appeal, Plaintiff maintains that: (1) the ALJ erred in weighing the treating physicians' opinions and failed to give goods reasons for rejecting their limitations; (2) the ALJ erred in evaluating Plaintiff's reading disorder; (3) the ALJ erred in failing to find that Plaintiff met the requirements for Listing 12.05(C); (4) the ALJ erred in

3

evaluating Plaintiff's pain, credibility, and subjective complaints; and (5) the ALJ committed various vocational errors. Each argument will be addressed in turn.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

Upon consideration of an application for disability benefits, the ALJ is guided by a sequential benefits analysis, which works as follows: At Step 1, the ALJ asks if the claimant is still performing substantial gainful activity; at Step 2, the ALJ determines if one or more of the claimant's impairments are "severe;" at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in

4

the Listing of Impairments; at Step 4, the ALJ determines whether or not the claimant can still perform her past relevant work; and, finally, at Step 5 – the step at which the burden of proof shifts to the ALJ – the ALJ determines, once it is established that the claimant can no longer perform his past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform. *See Gwizdala v. Commissioner of Soc. Sec.,* No. 98-1525, 1999 WL 777534, at *2 n.1 (6th Cir. Sept. 16, 1999) (*per curiam*). If the ALJ determines at Step 4 that the claimant can perform his past relevant work, the ALJ need not complete the sequential analysis. *See* 20 C.F.R. § 404.1520(a). However, if the ALJ errs in finding that the claimant can perform his past relevant work, the matter should be remanded for further consideration under Step 5. *See Lauer v. Bowen*, 818 F.2d 636, 641 (7th Cir. 1987).

The claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, he must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

### A.

For his first assignment of error, Plaintiff maintains that the ALJ erred in failing to give deference to the opinions of Drs. Saab and Swedburg, Plaintiff's treating physicians. Plaintiff further asserts that the ALJ erred in failing to give "good reasons" for rejecting their findings. Plaintiff's assertions are unavailing.

An ALJ must give the opinion of a treating source controlling weight if he or she finds that the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Commissioner of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)). Deference is due, however, only when the physician supplies sufficient medical data to substantiate his diagnosis and opinion. *Giddings v. Richardson,* 480 F.2d 652, 656 (6th Cir. 1976). Mere diagnosis of a condition is not indicative of a disabling functional debilitation. *See Varley v. Secretary of Health & Human Servs.,* 820 F.2d 777, 780 (6th Cir. 1987). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

The Social Security regulations likewise recognize the importance of longevity of treatment, providing that treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). In weighing the various opinions and medical evidence, the ALJ must consider other

6

pertinent factors such as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004).

Furthermore, the ALJ must provide "specific reasons for the weight given to a treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson,* 378 F.3d at 544 (citing Soc. Sec. Rul. 96-2p). Nonetheless, the ultimate determination of whether a claimant is "disabled" rests with the Commissioner, and not with the treating physician. *See* Soc. Sec. Ruling 96-5p; *see also Varley,* 820 F.2d at 780.

Here, Plaintiff was treated by Dr. Elie Saab, a pulmonary specialist, twice in 2003 and once in 2004 for breathing problems. In an October 1, 2003 treatment note, Dr. Saab indicated that Plaintiff's forced vital capacity (FVC) was moderately reduced, whereas his forced expiratory velocity (FEV) was severely reduced (Tr. 213).

Thereafter, in March 2004, Dr. Saab described Plaintiff as a person with chronic obstructive pulmonary disease (COPD), and he noted wheezing as well as nail clubbing on physical examination. (Tr. 210). Dr. Saab stated that Plaintiff's FEV-1 was at 48% of predicted which put him in the severe range of airflow obstruction. (Tr. 210). Moreover, Dr. Saab concluded that Plaintiff could not exercise and was, therefore, unemployable. (Tr. 210).

However, despite Dr. Saab's opinion that Plaintiff could not exercise as a result of

7

COPD, Plaintiff's pulmonary function tests were well below the Listing requirements. *See* 20 C.F.R. pt. 404, Subpt. P, App. 1 Listing 3.02 (Chronic pulmonary insufficiency). Furthermore, as noted by the ALJ, although Dr. Saab indicated that Plaintiff is disabled, he also reports that Plaintiff continued to smoke against medical advice and has refused pulmonary rehabilitation which has been strongly recommended. (*See* Tr. 304.)

Thus, the ALJ gave greater weight to the opinions of Dr. McKenna, a medical expert, than to those of Dr. Saab. (Tr. 21.)

James McKenna, M.D., identified himself as board certified in internal medicine and pulmonary diseases. (Tr. 401). Dr. McKenna acknowledged that Plaintiff had a respiratory problem that the doctor characterized as second degree lung disease. (Tr. 404). Dr. McKenna referred to results from pulmonary function tests and commented that an FVC rating of 1.95 for a person of Plaintiff's height would probably allow him to perform medium work. (Tr. 406, referring to Tr. 220).

Although Dr. Saab found that the Plaintiff was unable to work, Dr. McKenna testified that Plaintiff's emphysema affects only a portion of his lungs and that there is great deal of redundancy in lung function. Dr. McKenna further testified that the claimant's FEV-1 and FVC values were at or near normal.

Here, Dr. Saab's treatment history with Plaintiff consisted of only three visits. Moreover, Dr. Saab's disability finding was not supported by objective medical evidence.

As noted above, it is the ALJ's prerogative to resolve conflicts and weigh the evidence of record. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir.1994) (It is the

ALJ's function to resolve conflicts in the medical evidence and to determine issues of credibility)  Thus,  the ALJ's determination must stand if it is supported by substantial evidence regardless of whether the reviewing court would resolve the conflicts in the evidence differently. *Maxton v. Commissioner of Social Sec*., 2008 WL 4758675, 7 (S.D. Ohio 2008) (citing  *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir.1983)).

Accordingly, the undersigned finds that the ALJ did not err in weighing the opinion of Dr. Saab.

The ALJ also discredited the findings of Dr. Swedberg.

Plaintiff began treating with Dr. Phil Swedberg in March 2004, and the record shows numerous visits in 2004 and 2005.  (Tr. 307-351).  Dr. Swedberg completed a "Pulmonary Residual Functional Capacity Questionnaire" (*see* Tr. 295-98) wherein he indicated that Plaintiff was incapable of performing even "low stress" jobs.  (Tr. 296). Dr. Swedberg rated Plaintiff's prognosis as "poor" (Tr. 296), and opined that Plaintiff could not even lift ten pounds (Tr. 297) and checked the "never" box for all postural activities (twisting, stooping, crouching/squatting).  (Tr. 297).  Dr. Swedberg also opined that Plaintiff experienced "bad days" that would cause him to be absent form work more than four days per month.  (Tr. 298).

The ALJ, however, noted that Dr. Swedberg was neither a pulmonary nor an orthopedic specialist, and the ALJ found that Dr. Swedberg's disability findings were not supported by objective medical evidence.

As noted by the ALJ, Dr. Swedberg's treatment notes from March 2004 indicate

that Plaintiff's pulmonary and back conditions are "stable." Moreover, in treatment notes from May 2004 and August 2004 visits, Dr. Swedberg reports that Plaintiff had a normal gait and denied that his back pain radiated to the legs. Furthermore, the ALJ noted that while the Plaintiff saw Dr. Swedberg on a fairly regularly, it was often for medication refills and routine medical complaints that quickly resolved, such as ear infection, lightheadedness and bloody stool.

Accordingly, the ALJ reasonably declined to grant controlling weight or even substantial deference to Drs. Saab and Swedberg. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("Treating physicians' opinions are only given such deference when supported by objective medical evidence.").

Plaintiff also maintains that the ALJ erred in failing to give controlling weight to the opinion of Dr. Aina.

On March 24, 2003, Plaintiff saw Olaynka O. Aina, M.D. for a consultative examination. Dr. Aina noted that Plaintiff's chest examination revealed bilateral symmetry with good excursion on inspiration. (Tr. 186). Dr. Aina found that Plaintiff's lungs were clear to auscultation and that he could walk on his heels and toes and perform a squat. (Tr. 186). Dr. Aina found no tenderness on palpation of any joint, and Dr. Aina reflected that a neurological examination was entirely negative. (Tr. 186). Moreover, an x-ray of Plaintiff's chest revealed emphysema, but no acute process. (Tr. 186). Thus, Dr. Aina opined that Plaintiff could lift, pull and push 25 pounds occasionally and 20 pounds

frequently (*i.e.* that he was capable or performing light work). (Tr. 186). ²

However, as noted above, Dr. Swedberg's treatment notes from March 2004 indicate that Plaintiff' back conditions are "stable." Moreover, X-rays of plaintiff's lumbosacral spine, taken in December 2003, showed only mild degnerative disc disease at L4-5 and L5-S1. (Tr. 353).

Accordingly, the ALJ clearly articulated his reasoning for the weight assigned to the opinions of Drs. Saab, Swedberg, and Aina, and the undersigned finds that the ALJ's decision to give little weight to their findings is supported by substantial evidence.

**B**.

For his next assignment of error, Plaintiff argues that the ALJ erred in failing to find that Plaintiff meets or equals the requirements of Listing 12.05(C).

Listing 12.05 provides as follows:

> 12.05 *Mental Retardation*: mental retardation refers to significantly subaverage general intellectual functioning with adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A.   Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
> OR
> B.   A valid verbal, performance, or full scale IQ of 59 or less;
> OR
> C.   A valid verbal, performance, or full scale IQ of 60 through 70

---

². The ALJ found Plaintiff cable of performing medium work, which requires Plaintiff to lift up to 50 pounds occasionally and 25 pounds frequently.

and a physical or other mental impairment imposing an additional and significant work-related limitation of function
OR
    D.    A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence or pace; or
4. Repeated episodes of decompensation, each of extended duration

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

To meet the requirements of a listed impairment, plaintiff must satisfy all of the elements of that impairment. *See Hale v. Secretary of Health & Human Servs.,* 816 F.2d 1078, 1083 (6th Cir. 1987) (citing *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984)). Accordingly, under Listing 12.05(C), a plaintiff must first demonstrate that his impairment satisfies the diagnostic description for mental retardation within 12.05, in addition to meeting the criteria of subsection C of 12:05. *See Foster v. Halter,* 279 F.3d 348, 354 (6th Cir. 2001). Thus, a claimant will meet the Listing for mental retardation only "[i]f [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria. . . ." *Carmack v. Barnhart*, No. 04-6152 147 Fed.Appx. 557, *560 (6th Cir.2005) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A) (emphasis added)).

The diagnostic description of mental retardation is as follows:

Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptative functioning initially manifested during the developmental period: *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.

12

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills. *West v. Commissioner Social Sec. Admin.* 2007 WL 1991059, *5 (6th Cir. 2007) (citing *Heller v. Doe by Doe*, 509 U.S. 312, 329 (1993)).

Here, the ALJ found that Plaintiff suffered from borderline intellectual functioning. However, as noted above, in order to meet or equal Listing 12.05C, a plaintiff must first demonstrate a threshold diagnosis of mental retardation. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. A qualifying IQ score, standing alone, is insufficient to meet the Listing requirement. Thus, there is no evidence in the record, nor does Plaintiff allege, that he has been diagnosed with mental retardation. Accordingly, the ALJ did not erred in failing to find that Plaintiff met or equaled. the requirements of Listing 12.05.

## C.

Plaintiff further maintains that the ALJ erred in evaluating his pain, credibility, and subjective complaints. Plaintiff asserts that the ALJ improperly focused on his failure to stop smoking, the fact that his daughter took his pain medication, and failed to properly apply factors under SSR 96-7p. Plaintiff's assertions lack merit.

SSR 96-7p establishes a two step process for evaluating the claimant's testimony and statements about symptoms such as pain, fatigue or weakness.

First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce

13

the claimant's pain or other symptoms. If not, the symptoms cannot be found to affect the claimant's ability to do basic work activities. SSR 96-7p.

Second, if an underlying physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the ALJ must evaluate the intensity, persistence and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit his ability to work. If the claimant's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the claimant's statements based on a consideration of the entire case record. SSR 96-7p.

The "ALJ may not disregard subjective complaints merely because they are not fully supported by objective medical evidence." *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir.1995). Rather, this is but one factor to consider, along with the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medication; treatment other than medication; any measures the claimant has used to relieve the pain or other symptoms; and functional limitations and restrictions. 20 C.F.R. § 404.1529(c)(3); *See also* SSR 96-7p.

While SSR 96-7p does not require the ALJ to analyze and elaborate on each of these factors when making a credibility determination, the ALJ must sufficiently articulate his assessment of the evidence to assure the court that he considered the

important evidence and to enable the court to trace the path of his reasoning. *Patterson v. Barnhart,* 428 F.Supp.2d 869, 880 (E.D.Wis. 2006). SSR 96-7p further requires the ALJ to provide "specific reasons for the finding on credibility, supported by the evidence in the case record." *Id. (*citing SSR 96-7p).

Moreover, it is within the discretion of the ALJ - who actually meets with and takes testimony from an individual plaintiff - to evaluate that plaintiff's credibility. As the Sixth Circuit has found: "[i]t is for the [Commissioner], not a reviewing court, to make credibility findings." *Felisky v. Bowen,* 35 F.3d 1027,1036 (6th Cir. 1994); *see also McGuire v. Commissioner of Soc. Sec.,* No. 98-1502, 1999 WL 196508, at *6 (6th Cir. Mar. 25, 1999) (*per curiam*) ("An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility").

Contrary to Plaintiff's assertion, however, his smoking is additional evidence that his credibility was properly challenged by the ALJ. *See Russell v. Secretary of Health & Human Servs.,* No. 90-1395, 1990 WL 209576, at *3 (6th Cir. Dec. 19, 1990) ("This court has held that when a claimant's lifestyle contributes to his symptoms ... he is not entitled to disability benefits .... Plaintiff's unwillingness to [stop smoking and thus] relieve his symptoms undermines the credibility of his claims ....").

As noted by the ALJ:

In assessing claimant's overall credibility, I considered the fact that the claimant alleges a debilitating breathing condition, yet he continues to smoke against medical advice from many treating and examining physicians. There is also some references in the record to other instances of

15

> non-compliance with prescribed treatment. Regarding non-compliance issues, I recognize the claimant has sometimes alleged that he has not taken medication as prescribed because of financial/insurance issues. Yet his smoking habit costs $50-100 per month. The claimant himself reports that his breathing problems improve with he smokes less.

(Tr. 20).

The ALJ also noted that Plaintiff refused pulmonary rehabilitation which was strongly recommended by his physician. Moreover, the ALJ considered additional inconsistent statements by Plaintiff. Plaintiff testified that he stopped work because of breathing difficulties and back pain. However, he also reported that he was laid off from his job in May of 2002, and he drew unemployment benefits for six months.

Furthermore, although Plaintiff that alleged his daughter was taking his pain medication, Dr. Swedburg noted that Plaintiff had given contradictory statements regarding his use of medication. Thus, Dr. Swedburg refused to prescribe Plaintiff any further medication and questioned whether Plaintiff was selling or trading his narcotic medication.

Finally, the ALJ properly considered his own observations in making a credibility finding. SSR 96-7p; *Buxton*, 246 F.3d at 773 ("The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints.").

As noted above, the issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence.

16

*See Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). The ALJ properly evaluated Plaintiff's allegations in accordance with controlling law, and he reasonably concluded that they were not fully credible. The ALJ's credibility finding is entitled to deference and thus should be affirmed. *See Jones v. Commissioner of Social Security*, 336 F.3d 469, 476 (6th Cir. 2003).

**D.**

For his last assignment of error, Plaintiff maintains that the ALJ's hypothetical questions to the vocational expert were improper because they did not state that Plaintiff had a reading disorder and/or that they failed to note his borderline I.Q. Plaintiff's assertions are not well-taken.

Here, Plaintiff maintains that Dr. Berg found that he had a reading disorder, and Plaintiff argues that he could not do jobs identified by the vocational expert as those jobs have a reasoning and language level of at least one, which would require reading 95-120 words a minute. However, a semi-skilled job previously performed by Plaintiff had such requirements - *i.e.*, his job as an electrician's helper has a language level of two which would require reading at a rate of 190-215 words a minute. Moreover, his other two past jobs required even greater reading skills - and the iron worker has a reasoning level of "3" and the arch welder has a reasoning level of "4." Thus, in light of the fact that Plaintiff performed those jobs successfully over a 26 year period, the ALJ did not err in failing to include such limitations in hypotheticals to the vocational expert.

Furthermore, with respect to Plaintiff borderline I.Q, the ALJ discussed the scores

measured by Dr. Berg, and the ALJ explained why he felt these scores were inconsistent with a person who successfully performed high level skilled and semi-skilled work. (Tr. 18-19). Thus, the ALJ reasonably did not include those limitations because they are not supported in the record. The law is clear that the ALJ was not required to include limitations in his hypothetical question that were not supported or not credible. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.").

The VE's testimony provided substantial evidence supporting the ALJ's finding that Plaintiff was not disabled because he could perform a significant number of jobs. (Tr. 616-20). *See Hall v. Bowen*, 837 F.2d 272, 273, 275–76 (6th Cir. 1988) (1,350 jobs is a significant number of jobs in Dayton area and national economy).

For the foregoing reasons, Plaintiff's assignments of error are without merit. The ALJ's decision is supported by substantial evidence and should be affirmed.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The decision of the Commissioner is **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and should be **AFFIRMED.**

2. As no further matters remain pending for the Court's review, this case should be **CLOSED.**

Date: March 3, 2009                                         s/Timothy S. Black
                                                            Timothy S. Black
                                                            United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RICHARD L. HICKS,                    Case No. 1:08-cv-24

       Plaintiff,                           Weber, J.
                                                Black, M.J.
vs.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**NOTICE**

       Attached hereto is the Report and Recommended Decision of the Honorable Timothy S. Black, United States Magistrate Judge. Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten (10) days after being served with this Report and Recommendation. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen (13) days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail, and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).