UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RICHARD HICKS,

Plaintiff

v. C-1-08-24

COMMISSIONER OF SOCIAL SECURITY,

Defendant

This matter is before the Court upon the Report and Recommendation of the United States Magistrate Judge (doc. no. 8) and plaintiff's objections thereto (doc. no. 9). Plaintiff, a Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) claimant, brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying plaintiff's application for DIB and SSI benefits. The Magistrate Judge concluded that there is substantial evidence to support the Commissioner's findings and recommended that the final decision of the Commissioner that plaintiff is not entitled to benefits be affirmed.

I.

Plaintiff filed applications for DIB and SSI on November 27, 2002. Those applications were denied initially and on reconsideration. Plaintiff's request for a *de novo* hearing before the ALJ was granted and an evidentiary hearing was held March 14, 2004. Plaintiff was represented by counsel at the hearing. Dr. James McKenna testified as a medical expert along with George Parsons, who testified as a vocational expert.

II.

PLAINTIFF'S UNCONTROVERTED OBJECTION 1: The weight to the doctors in the record.

An ALJ must give the opinion of a treating source controlling weight if he or she finds that the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Commissioner of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)). Deference is due, however, only when the physician supplies sufficient medical data to substantiate his diagnosis and opinion. *Giddings v. Richardson,* 480 F.2d 652, 656 (6th Cir.

1976). Mere diagnosis of a condition is not indicative of a disabling functional debilitation. *See Varley v. Secretary of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

The Social Security regulations likewise recognize the importance of longevity of treatment, providing that treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). In weighing the various opinions and medical evidence, the ALJ must consider other pertinent factors such as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's

supportability by evidence and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004).

Furthermore, the ALJ must provide "specific reasons for the weight given to a treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson,* 378 F.3d at 544 (citing Soc. Sec. Rul. 96-2p). Nonetheless, the ultimate determination of whether a claimant is "disabled" rests with the Commissioner, and not with the treating physician. *See* Soc. Sec. Ruling 96-5p; *see also Varley,* 820 F.2d at 780.

More weight is given as a matter of law to an examining or treating doctor's supported limitations than to a non-examining doctor. *Shelman v. Secretary*, 821 F. 2d 316, 321 (6th Cir. 1987). Here Drs. Saab and Swedberg and Dr. Aina are supported and thus are entitled to more weight than the telephone medical advisor.

The Magistrate Judge mentioned only three visits to Dr. Saab, the lung specialist. This is of course three more visits than Mr. Hicks had to Dr. McKenna, the medical advisor who never examined him. The conclusion of Dr. McKenna and the ALJ that Mr. Hicks' pulmonary function studies were normal or near normal is not supported by the evidence. Mr. Hicks made two attempts at these tests in 2003 and could not do the tests due to a cleft palate. When finally able to perform a pulmonary function study test later in 2003, he had FEV-1 of 48% and MVV of only 19%. These results are not normal or near normal. Dr. Saab specifically noted that the FVC was moderately reduced on testing and the FEV-1 was severely reduced. On a later stress test done in October, 2003, Mr. Hicks was only able to exercise for 4 minutes. This was not normal. He had moderate severe chronic obstructive pulmonary disease on CT scan of the lungs in 2005 and a nodule in the right lung. These are not normal findings. Thus, Dr. McKenna's opinion is not supported by the evidence and does not create a conflict in the record.

Additionally, the ALJ failed to note that Dr. Swedberg treated Mr. Hicks for his low back impairments as well as for his breathing problems. Dr. McKenna specifically noted that he did not have a “good feel” for the low back impairments. Thus, he is not capable of testifying about these and no conflict is made to appear in the record. Dr. Swedberg noted chronic low back pain and stated that the impairments were reasonably consistent with the symptoms and functional limitations. He also limited Mr. Hicks to lifting 10 pounds, something which would allow for only sedentary work and would thus disable Mr. Hicks at his age. MRI showed degenerative disc disease of the low back. Dr. McKenna did <u>not</u> see this MRI as it was submitted after the ALJ hearing. The degenerative disc disease produces pain down the legs. Dr. Aina also found restricted motion of the back on his exam.

Drs. Saab, Swedberg, and Aina are thus entitled as a matter of law to the most weight in the record under Social Security Ruling 96-2p (1996) versus the non-examining Dr. McKenna.

PLAINTIFF'S UNCONTROVERTED OBJECTION 2: The consultative exam of Dr. Aina.

Dr. Swedberg's treatment notes from March 2004 indicate that Plaintiff' back conditions are "stable" and X-rays of plaintiff's lumbosacral spine, taken in December 2003, showed only mild degnerative disc disease at L4-5 and L5-S1. If the back condition is "stable," this term medically means that it is not better or worse. It does not mean that there are no symptoms for the low back. Dr. McKenna is a lung doctor and did not testify about the low back impairment.

Under the Commissioner's Regulations, a consulting doctor cannot base his limitations strictly on a claimant's subjective complaints. 20 CFR 404.1519 n notes that a consulting doctor will have a "good understanding" of the disability program. As part of this "good understanding," the consulting doctor would of course know 20 CFR 404.1529 (a) which specifically states that statements about pain or other symptoms will not alone establish that a claimant is disabled. Thus, a claimant cannot be found disabled based on subjective statements alone, as he must also have a medically determinable impairment which can reasonably be expected to produce the pain or

other symptoms alleged. On his exam, Dr. Aina was aware of this Regulation and then, by definition, could not limit Mr. Hicks to the 20 pounds of lifting based on his subjective complaints alone.

PLAINTIFF'S UNCONTROVERTED OBJECTION 3: The failure to give "good reasons" for Drs. Saab and Swedberg.

Under 20 CFR 404.1527 (d), an ALJ must give "good reasons" for rejecting a finding of disability from a treating source. Even if the ALJ's decision is otherwise supported by substantial evidence, the ALJ errs if he does not give "good reasons" on this. *Wilson v. Commissioner*, 378 F. 3d 541, 544 (6th Cir. 2004).

Dr. Saab was a treating lung doctor. His limitations are supported by the abnormal pulmonary function studies in 2003 and by the limited stress test. As noted earlier, these results are not normal or near normal. The 2005 CT scan of the lungs showed moderate chronic obstructive disease and bullous emphysema. These are good objective medical findings to support the limitations of Dr. Saab and Dr. Swedberg. Dr. Swedberg treated the low back pain, a condition on which Dr. McKenna did not testify. Dr. Swedberg is qualified to report the limitations from this. The reasons the ALJ gave for rejecting Drs. Saab and Swedberg were not "good reasons" in view of this medical evidence.

Under Ruling 96-2p (1996), even if a doctor is not entitled to "controlling weight," in many instances he is still entitled to the "most weight" in the record. Drs. Saab and Swedberg are entitled to the most weight in the record under Ruling 96-2p (1996) and 20 CFR 404.1527 (d) on the specific grounds of treatment relationship, its length, specialization (Dr. Saab), supportability, and consistency. Their limitations to light work or less are supported by the CT scan of the lungs, the MRI of the low back, and the pulmonary function studies and the stress test results.

The ALJ must provide "specific reasons for the weight given to a treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson,* 378 F.3d at 544 (citing Soc. Sec. Rul. 96-2p).

Here, plaintiff was treated by Dr. Elie Saab, a pulmonary specialist, twice in 2003 and once in 2004 for breathing problems. In an October 1, 2003 treatment note, Dr. Saab indicated that plaintiff's forced vital capacity (FVC) was moderately reduced, whereas his forced expiratory velocity (FEV) was severely reduced.

Thereafter, in March 2004, Dr. Saab described plaintiff as a person with chronic obstructive pulmonary disease (COPD), and he noted wheezing as well as nail clubbing on physical examination. Dr. Saab stated that Plaintiff's FEV-1 was at 48% of predicted which put him in the severe range of airflow obstruction. Dr. Saab concluded that plaintiff could not exercise and was, therefore, unemployable.

Despite Dr. Saab's opinion that plaintiff could not exercise as a result of COPD, the ALJ gave greater weight to the opinions of Dr. McKenna, a medical expert, than to those of Dr. Saab.

Accordingly, the undersigned finds that the ALJ erred in weighing the opinion of Dr. Saab.

The ALJ also discredited the findings of Dr. Swedberg.

Plaintiff began treating with Dr. Phil Swedberg in March 2004, and the record shows numerous visits in 2004 and 2005. Dr. Swedberg completed a "Pulmonary Residual Functional Capacity Questionnaire" wherein he indicated that plaintiff was incapable of performing even "low stress" jobs. Dr. Swedberg rated Plaintiff's prognosis as "poor," and opined that plaintiff could not even lift ten pounds and checked the "never" box for all postural activities (twisting, stooping, crouching/squatting). Dr. Swedberg also opined that plaintiff experienced "bad days" that would cause him to be absent from work more than four days per month.

PLAINTIFF'S UNCONTROVERTED OBJECTION 4: The pain, credibility and subjective complaints.

Plaintiff further maintains that the ALJ erred in evaluating his pain, credibility, and subjective complaints. Plaintiff asserts that the ALJ improperly focused on his failure to stop smoking, the fact that his daughter took his pain medication, and failed to properly apply factors under SSR 96-7p.

There is no medical evidence in this case that stopping smoking would clear up the shortness of breath.

By 2005, Mr. Hicks was only smoking 1-2 cigarettes a day. There is no evidence that stopping smoking would clear up the 5 mm. nodule in his right lung. In *Schramek v. Commissioner*, 226 F. 3d 8-9. 812-813 (7th Cir. 2000), the Court noted the problems in using a failure to stop smoking as a ground to find the testimony not credible.

20 CFR 404.1530 and Social Security Ruling 82-59 (1982) provide for a host of procedural safeguards before an ALJ may deny a claim based on a failure to follow prescribed treatment. The treatment must first be prescribed and must then be expected to restore the ability to work, and the ALJ must give notice to the claimant of the intent to apply this before doing so. None of this happened in this case, so it is also difficult to say that the Commissioner may now use a failure to stop smoking to find Mr. Hicks' testimony not credible.

In this case, there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's pain or other symptoms. The ALJ must, therefore, evaluate the intensity, persistence and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit his ability to work.

The "ALJ may not disregard subjective complaints merely because they are not fully supported by objective medical evidence." *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir.1995). Rather, this is but one factor to consider, along with the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medication; treatment other than medication; any measures the claimant has used to relieve the pain or other symptoms; and functional limitations and restrictions. 20 C.F.R. § 404.1529(c)(3); *See also* SSR 96-7p.

While SSR 96-7p does not require the ALJ to analyze and elaborate on each of these factors when making a credibility determination, the ALJ must sufficiently articulate his assessment of the evidence to assure the court that he considered the important evidence and to enable the court to trace the path of his reasoning. *Patterson v. Barnhart,* 428 F.Supp.2d 869, 880 (E.D.Wis. 2006). SSR 96-7p further requires the ALJ to provide "specific reasons for the finding on credibility, supported by the evidence in the case record." *Id. (*citing SSR 96-7p).

PLAINTIFF'S OBJECTION 5: The vocational errors.

Mr. Hicks has no transferable skills from his past work to light work. This is the most work he can do exertionally, based on the supported limitations of Drs. Aina, Saab, and Swedberg. These three doctors are all entitled to more weight than Dr. McKenna. The appropriate hypothetical to obtain jobs would have limited Mr. Hicks to light work only, a level of work which disables him under grid Rule 202,02, Appendix 2, 20 CFR Part 404 at his onset date of disability.

III.

Judicial review of the Commissioner's decision is limited in scope by 42 U.S.C. § 405(g). The Court's sole function under the statute is to determine whether there is substantial evidence to support the Commissioner''s findings of no disability. The Commissioner's findings should stand if, after a review of the record in its entirety, the Court finds that the decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ***Richardson v. Perales***, 402 U.S. 389, 401 (1971); ***Mullen v. Sec. of HHS***, 800 F.2d 535 (6th Cir. 1986); ***Kirk v. Sec. of HHS***, 667 F.2d 524 (6th Cir. 1981), ***cert. denied*** 461 U.S. 957 (1983).

Upon *de novo* review of the record, the Court sustains the plaintiff's uncontroverted objections to the Report and Recommendation of the Magistrate Judge (doc. no. 8). The decision of the defendant to deny disability benefits is **REVERSED**. This case is **REMANDED** to the defendant pursuant to Sentence Four of 42 U.S.C. § 405(g) for further consideration in light of this opinion and to resolve any other issues the defendant finds to be appropriate in accordance to law.

**IT IS SO ORDERED.**

                                                s/Herman J. Weber
                                          Herman J. Weber, Senior Judge
                                          United States District Court